UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| M&N PLASTICS, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KATHLEEN SEBELIUS, *Secretary, United States Department of Health and Human Services, et al.*,<br><br>Defendants. | Civil Action No. 13-819<br><br>Judge Beryl A. Howell |

### MEMORANDUM OPINION

This action challenges the "contraceptive mandate" in the Patient Protection and Affordable Care Act ("ACA"), Pub. L. 111-148, March 23, 2010, 124 Stat. 119, as a violation of the Free Exercise of Religion, Free Speech, and Free Association Clauses of the First Amendment to the United States Constitution, U.S. CONST. AM. I, the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 706(2), *see* Compl. ¶¶ 173–264, ECF No. 2. Pending before the court is the defendants' Motion to Transfer this case, ECF No. 8, under 28 U.S.C. § 1404(a), to the plaintiffs' home district, the Eastern District of Michigan. For the reasons set forth below, the defendants' motion is granted and the case is transferred.

I.   BACKGROUND

The plaintiffs, M & N Plastics, Inc., Terrence Nagle, Jr., Christopher Nagle, James Nagle, and John Martin Nagle (collectively "the plaintiffs") filed this action for declaratory and injunctive relief on May 31, 2013. The plaintiffs seek to enjoin the defendants, the United States Department of Health and Human Services, the Secretary of Health and Human Services,

1

the United States Department of the Treasury, the Secretary of the Treasury, the United States Department of Labor, and the Secretary of Labor (collectively "the defendants"), from enforcing the ACA's contraceptive coverage mandate ("the contraceptive mandate").[1] The corporate plaintiff is a Michigan corporation and the individual plaintiffs, who own and operate the corporation, appear to be Michigan residents. *See* Compl. ¶¶ 24–25, 30–38 (listing registration of corporate defendant and religious and organizational memberships of individual plaintiffs in Michigan based groups).

This is the second time the plaintiffs have filed this action. The plaintiffs first filed their complaint in their home district, the Eastern District of Michigan, on May 8, 2013. Defs.' Mot. to Transfer Ex. 1 ("Compl., *Nagle v. Sebelius*, No. 2:13-cv-12036, ECF No. 1) ("Michigan Complaint") at 1, ECF No. 8-1. The Michigan Complaint is, in all relevant aspects, identical to the instant complaint. *Compare* Michigan Complaint *with* Compl. The plaintiffs voluntarily dismissed the Michigan Complaint just over two weeks later, on May 24, 2013. Defs.' Mot. to Transfer Ex. 2 ("Notice of Voluntary Dismissal, *Nagle v. Sebelius*, No. 2:13-cv-12036, dated May 24, 2013) at 1, ECF No. 8-2. Almost immediately thereafter, on May 31, 2013, the plaintiffs re-filed their Complaint before this Court. *See* Compl.

The plaintiffs' declarant explains that after the plaintiffs filed the Michigan Complaint, they were informed, on May 23, 2013, that their health plan was "grandfathered" and did not have to comply with the contraceptive mandate. Declaration of Mark Merucci, President, M&M Benefit Group, LLC ("Merucci Decl.") ¶ 11, ECF No. 10-2. The plaintiffs consequently

---

[1] "Part of the [ACA] directs all group health plans and health insurance issuers to provide, without cost-sharing requirements, preventive care as determined by the Health Resources and Services Administration. In turn, the Administration issued guidelines requiring coverage for all Food and Drug Administration-approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity, as prescribed by a healthcare provider. There are exceptions—some ephemeral, some permanent—for grandfathered plans, religious organizations, and small businesses." *Gilardi v. U.S. Dep't of Health & Human Servs.*, 13-5069, 2013 WL 5854246, at *1 (D.C. Cir. Nov. 1, 2013) (internal citations and quotation marks omitted).

dismissed the Michigan Complaint on May 24, 2013.  *See* Defs.' Mot. to Transfer Ex. 2 at 1.  The plaintiffs' declarant further explains that on May 30, 2013, he was "informed by [the plaintiffs' insurance carrier] that Plaintiffs' plan is not grandfathered and is subject to the mandate."  Merucci Decl. ¶ 12.  The plaintiffs then promptly filed the instant action in this Court on May 31, 2013.  *See* Compl.

The defendants move to transfer this case to the Eastern District of Michigan "in the interest of justice" under 28 U.S.C. § 1404(a).  This motion is now ripe for decision.

## II.    LEGAL STANDARD

A case may be transferred to another venue "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  As the Supreme Court has noted, "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  "[T]ransfer in derogation of properly laid venue" in the District of Columbia "must . . . be justified by particular circumstances that render the transferor forum inappropriate by reference to the considerations specified in that statute."  *Starnes v. McGuire*, 512 F.2d 918, 925 (D.C. Cir. 1974).  In deciding a motion to transfer venue under § 1404(a), a court must first determine whether the transferee district is one where the action "might have been brought," 28 U.S.C. § 1404(a), and then must balance the private and public interests involved in the proposed transfer to determine "whether the defendant has demonstrated that considerations of convenience and the interest of justice support a transfer," *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 178 (D.D.C. 2007).

**III.   DISCUSSION**

There is no dispute that this action "might have been brought" in the Eastern District of Michigan; indeed, it was brought there the first time the complaint was filed. *See* Michigan Complaint. Thus, at issue is whether the convenience of the parties and the interest of justice, as encompassed by the various public and private interest factors, support a transfer.

Courts generally look to six private interest factors in evaluating transfer motions: "1) the plaintiff's choice of forum, 2) the defendant's choice of forum, 3) where the claim arose, 4) the convenience of the parties, 5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts, and 6) the ease of access to sources of proof." *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 32–33 (D.D.C. 2008) (citing *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 502 F. Supp. 2d 64, 67 (D.D.C. 2007)). In the instant case, the first and second factors weigh against the plaintiffs.

Although courts may give deference to the plaintiff's choice of forum, this general rule gives way when that choice is not their "home forum" and "where there is an insubstantial factual nexus between the case and the plaintiff's chosen forum, deference to the plaintiff's choice of forum is . . . weakened." *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 192 (D.D.C. 2012); *see also Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable.") (internal quotation marks and citations omitted); *Pac. Maritime Ass'n v. NLRB*, 905 F. Supp. 2d 55, 60–61 (D.D.C. 2012). Indeed, the D.C. Circuit has cautioned that "[c]ourts in this circuit must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of

4

Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993); *see also Western Watersheds Project v. Pool*, No. 12-1113, 2013 WL 1800238, at *4 (D.D.C. Apr. 30, 2013) ("'[T]he mere fact that a case concerns the application of a federal statute by a federal agency does not provide a sufficient nexus to the District of Columbia to weigh against transfer.'") (quoting *Preservation Soc. of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 55 (D.D.C. 2012); *cf Oceana, Inc. v. Pritzker*, No. 13-770, 2013 WL 5801755, at *3–4 (D.D.C. Oct. 28, 2013) (declining to transfer case involving application of federal statute where plaintiffs were District of Columbia residents despite effects of statute occurring mainly in alternative forum).

The defendants correctly point out that the "plaintiffs do not address this Court's observation—cited in defendants' initial brief—that, while plaintiffs' choice of forum would ordinarily be entitled to some deference, 'that choice is conferred less deference by the court when a plaintiff's choice of forum is not the plaintiff's home forum.'" Defs.' Reply Supp. Mot. to Transfer at 2 n.2, ECF No. 12 (quoting *Pac. Maritime Ass'n*, 905 F. Supp. 2d at 60 (D.D.C. 2012)). Here, as the plaintiffs admit, their home forum is the Eastern District of Michigan. *See* Pls.' Opp'n to Defs.' Mot. to Transfer ("Pls.' Opp'n") at 4, ECF No. 10, ("Plaintiffs reside in Michigan"). Thus, their choice of forum is subject to less deference because they have selected a venue that is not their home forum and that bears an "insubstantial factual nexus" to the case, since the only connection to this forum relied upon by the plaintiffs is the fact that the contraceptive mandate is a federal action, ostensibly originating in Washington, D.C. *See id.*

The third factor, regarding where the claim arose, clearly favors venue in Michigan because all the plaintiffs are in Michigan and the effects of the contraceptive mandate on the

5

plaintiffs will be felt in Michigan. The only event at issue in this suit to have happened in this District is the issuance of the contraceptive mandate itself. *See id.* at 4.

The fourth, fifth, and sixth factors also favor venue in Michigan. With respect to the convenience of the parties, the plaintiffs argue that this District is the venue most convenient to the defendants, since the "Defendants reside in this district [and the] Defendants' attorneys reside in this district." *Id.* at 5. While it is certainly true that the defendants are all present in this District, it is also true that they are present in the Eastern District of Michigan and every other district in the country. The defendants are all either federal agencies, which operate across the United States, or the Secretaries of those agencies in their official capacities, who also operate across the United States. *See FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 28 (D.D.C. 2008) (finding presence of federal agency in the District of Columbia insufficient reason to deny transfer out of District of Columbia, especially where government agency "offers no reason why it could not conduct this litigation just as effectively" in the transferee district). In cases where, as here, "the action involves administrative review that the court is likely to determine on the papers" the convenience factors carry little weight in the transfer analysis. *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 69 (D.D.C. 2003). To the extent that live witnesses will have to testify or produce evidence, those witnesses and evidence will likely come from the plaintiffs, who are all located in Michigan. *See Cephalon*, 551 F. Supp. 2d at 28 (finding that venue in corporation's home district "would be somewhat more convenient for [the corporation's] witnesses, who are likely to comprise a large portion of the fact witnesses in this case"). Thus, the private interest factors favor venue in Michigan.

The public interest factors also favor transfer of this action. Courts typically look to three factors in evaluating the public interest: "(1) the transferee forum's familiarity with the

6

governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Foote v. Chu*, 858 F. Supp. 2d 116, 123 (D.D.C. 2012) (citing *Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 56 (D.D.C. 2011)). Since this is an issue of federal law, the first factor is effectively neutral; all federal courts should have the requisite familiarity with federal law. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (noting that federal courts "are presumptively competent to decide" issues of federal law) (internal quotation marks omitted). The plaintiffs attempt to show that the second factor favors venue in this District by noting that the Eastern District of Michigan has more pending cases per judge. The plaintiffs' own statistics, however, show that cases move to trial faster, a median of twenty-eight months, in Michigan, than in the District of Columbia, where it takes a median time of forty months. *See* Pls.' Opp'n at 7.[2]

As for the third public interest factor, although this is a matter of federal law, it affects a Michigan company owned by Michigan citizens that employs Michigan residents. Thus, the third factor favors resolving this case in Michigan. Although the plaintiffs characterize this suit as one with "national significance," *id.* at 6, it will have inherently local effects. *See Pac. Maritime Ass'n*, 905 F. Supp. 2d at 61–62 (D.D.C. 2012) (transferring case involving federal statute where plaintiff had no "offices or other ties to the District of Columbia" and the local population would suffer the effects of the government action); *Wyandotte Nation v. Salazar*, 825 F. Supp. 2d 261, 269 (D.D.C. 2011) (transferring case involving federal defendants to venue where decision "considerably affects the local interests").

In sum, evaluation of both the private and public interest factors demonstrates that transfer of this case to Michigan is both appropriate and warranted. What further tips the balance

---

[2] According to the plaintiffs, the median time from filing to disposition in civil cases is identical in the two districts.

in favor of transfer here is the issue the defendants spend the lion's share of their briefing on and the issue the plaintiffs attempt to gloss over: forum shopping. The plaintiffs fail to address the defendants' argument that re-filing the action in this district instead of their home district was motivated by an attempt to take advantage of favorable precedent here, *see Gilardi v. U.S. Dep't of Health and Human Servs.*, No. 13-5069 (D.C. Cir. Mar. 29, 2013), *affirmed by* 2013 WL 5854246 (D.C. Cir. Nov. 1, 2013) (reversing lower court's denial of preliminary injunction in challenge to the contraceptive mandate because plaintiffs had shown substantial likelihood of success on the merits), and avoiding unfavorable precedent in their home district, *see Autocam Corp. v. Sebelius*, 730 F.3d 618 (6th Cir. 2013) (affirming denial of preliminary injunction in similar case). *See* Defs.' Reply at 1.[3]

Recently, another judge on this Court addressed a transfer motion on closely analogous facts: a plaintiff brought suit in this District instead of its home district; precedent was favorable here but not favorable in the home district; and the only connection to this forum was the fact that the federal action giving rise to the claim occurred here. *See Lab. Corp. of Am. Holdings, v. NLRB*, No. 13-276, 2013 WL 1810636, at *2–3 (D.D.C. Apr. 4, 2013) ("*Lab. Corp.*"). In *Lab. Corp.*, the court noted that "[i]t is not 'in the interest of justice to encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific precedents, particularly in circumstances such as these where the relevant law is unsettled and the choice of forum may well dictate the outcome of the case.'" *Id.* at *3 (quoting *Schmid Labs., Inc. v.*

---

[3] The plaintiffs cite, in a footnote, two out-of-circuit cases as support for their position that their filing in this district after a voluntary dismissal in another court is permitted by Federal Rule of Civil Procedure 41(a)(1), which "essentially permits forum shopping." *See* Pls.' Opp'n at 2 n.2. As the defendants correctly point out, Rule 41 is not at issue here. *See* Defs.' Reply at 1. In any event, neither of the cases cited by the plaintiffs addressed the public interest weight to be given, during consideration of a venue transfer motion, to the plaintiffs' apparent forum shopping in choosing a forum for the re-filing of a voluntarily dismissed complaint. For example, *Harvey Specialty and Supply, Inc. v. Anson Flowline Equipment Inc.*, 434 F.3d 320, 324 (5th Cir. 2005) addressed, in *dicta*, the practice of adding non-diverse plaintiffs to defeat federal jurisdiction in a case removed from state court. Similarly inapposite is *Merit Insurance Company v. Leathersby Insurance Company*, 581 F.2d 137, 142–43 (7th Cir. 1978), which addressed the propriety of notice dismissal in light of motions to stay proceedings or to compel arbitration.

*Hartford Accident & Indem. Co.*, 654 F. Supp. 734, 737 (D.D.C. 1986)); *see also Schmid Labs., Inc.*, 654 F. Supp. at 737 (holding transfer proper under nearly identical factual circumstances). The Court finds the analysis in *Lab. Corp.* both persuasive and directly applicable here and, as the defendants point out, the plaintiffs have made no effort to distinguish this case from the circumstances of the instant case.

Although the plaintiffs argue they have not engaged in forum shopping, their actions stretch the Court's credulity. The plaintiffs dismissed this suit in their home district after receiving certain advice about the application of the contraceptive mandate to their health plan. *See* Pls.' Opp'n at 1. Yet, after learning their plan was not grandfathered, rather than re-filing their case in their home district where they initially brought the action, they chose to bring the case here, where precedent is more favorable but the connections to the action are tenuous at best. This smacks of the type of forum shopping that 28 U.S.C. § 1404(a) is designed to prevent. *See Schmid Labs., Inc.*, 654 F. Supp. at 737; *see also Milanes v. Holder*, 264 F.R.D. 1, 6 (D.D.C. 2009) (transferring case to plaintiff's home district because of forum shopping concerns); *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d. 1, 5 (D.D.C. 2006) (transferring case to plaintiffs' home district due to concern plaintiffs were bringing suit in venue only to take advantage of favorable precedent). "The point has been cogently made that venue provisions are designed with geographical convenience in mind, and not to 'guarantee that the plaintiff will be able to select the law that will govern the case.'" *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d at 1175 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 n.24 (1981)); *see also Van Dusen*, 376 U.S. at 636–37 (explaining that if parties regarded § 1404(a) "primarily as a forum-shopping instrument," this would "frustrate the remedial purposes . . . as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and

9

generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms."). The plaintiffs' choice to litigate this action here, over 550 miles away from home, is clearly not being done for "geographical convenience."

The plaintiffs point to their awareness of the unfavorable precedent in the Sixth Circuit when they decided to file their initial suit there as evidence that they are not engaging in forum shopping. Pls.' Opp'n at 2. This begs the question, however, since the plaintiffs never address why they did not simply re-file their case in their home district, where venue is indisputably proper and more convenient, instead of re-filing here.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that both the private and public interest factors, particularly the law's aversion to forum shopping, heavily favor transfer of this case to the Eastern District of Michigan, where the case was initially filed. Accordingly, the defendants' Motion to Transfer is granted.

An appropriate Order accompanies this Memorandum Opinion.

Date: November 5, 2013

_____
BERYL A. HOWELL
United States District Judge